UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KIMBERLY W.,

                Plaintiff,

v.                                                                                                CASE # 20-cv-01659

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER<br>  Counsel for Plaintiff<br>6000 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ.<br>IDA M. COMERFORD, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | CHRISTOPHER N. HURD, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

**I.      RELEVANT BACKGROUND**

    **A.      Factual Background**

Plaintiff was born on February 24, 1974 and has at least a high school education. (Tr. 188, 233). Generally, plaintiff's alleged disability at the time of application consisted of bipolar, anxiety, depression, left foot heel spur and GERD. (Tr. 232). Her alleged onset date of disability was September 1, 2013. (Tr. 229). Plaintiff's date last insured is June 30, 2023. (Tr. 229, 17).

    **B.      Procedural History**

On September 6, 2017, plaintiff applied for a period of Disability Insurance Benefits (SSD) under Title II of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (Tr. 188-197). Plaintiff's applications were denied, after which she timely requested a hearing before an Administrative Law Judge (ALJ). On December 2, 2019, plaintiff appeared before ALJ William M. Weir. (Tr. 36-63). On February 5, 2020, ALJ Weir issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 12-31). On September 22, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-3). Thereafter, plaintiff timely sought judicial review in this Court.

    **C.      The ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2023.

2. The claimant has not engaged in substantial gainful activity since September 1, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.).*

3. The claimant has the following severe impairments: major depressive disorder; generalized anxiety disorder; left ankle tendonitis; obesity; lumbago with lumbar degenerative disc disease; and bilateral hip degenerative joint disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart

P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant needs a sit stand option at will, defined as every 45 minutes but without break in station, focus, or productivity. The clamant can walk 300 feet at a time. She may not work with the public, but she may occasionally have coworkers and supervisory contact. She should not work in tandem.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 24, 1974 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-30).

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes two arguments in support of her motion. First, plaintiff asserts the ALJ relied on his own lay opinion rather than the opinion evidence in the record because he found none of the opinions to be persuasive and misstated or ignored medical evidence. Second, plaintiff argues the ALJ failed to fully consider her urinary incontinence impairment. (Dkt. No. 9 at 1 [Pl.'s Mem. of Law).

### B. Defendant's Arguments

Defendant responds to plaintiff's arguments and contends the ALJ's RFC finding is supported by substantial evidence in the record and plaintiff has not met her burden to prove otherwise. (Dkt. No. 11 at 11, 13 [Def.'s Mem. of Law]). Defendant also argues that plaintiff's urinary incontinence did not meet the durational requirement to be considered a severe impairment. (*Id*. at 19).

### III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where

evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

IV.     ANALYSIS

   A. RFC

Plaintiff primarily argues the RFC is not supported by substantial evidence because the ALJ did not find any of the medical opinions persuasive and therefore used his own lay opinion in formulating the RFC. (Dkt. No. 9 at 12). Plaintiff does not assert any specific error by the ALJ in the evaluation of physical impairments but focuses on the mental impairments and related RFC limitations.

Indeed, the ALJ found the opinions from Drs. Marks, Krist, Schwab, and Ransom unpersuasive but did not disregard them as alleged by plaintiff. (Dkt. No. 9 at 13). Rather, he concluded plaintiff was more limited than reflected in these opinions. (Tr. 26-27. citing 68-69, 312, 315. The Second Circuit has held a decision is supported by substantial evidence where the ALJ deviates from medical opinions in plaintiff's favor based on specific evidence in the record. *See Ramsey v. Comm'r of Soc. Sec.,* 830 F. App'x 37, 39 (2d Cir. 2020) (summary order) (upholding RFC finding where "the ALJ occasionally deviated from consultative examiners' recommendations to *decrease* [plaintiff's] RFC based on other evidence in the record, exemplified by the ALJ's determination that Ramsey should not interact with the public. ") (emphasis in original). Here, ALJ Weir found that the record supported additional limitations beyond those identified in the four medical opinions.

Plaintiff's repeated assertions that the ALJ erred because he did not have an opinion to support each limitation in the RFC is without merit. It is the ALJ, and not a medical source, who is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 404.1527(d)(2) and §§ 416.946(c), 416.927(d)(2). It is well settled by the Second Circuit that an ALJ's decision does not have to be supported by an opinion. *Poupore v. Astrue*, 566 F.3d 306 (2d Cir. 2009); *see Corbiere*

*v. Berryhill* 760 F. App'x 54, 56 (2d Cir. Jan. 23, 2019) (affirming the Commissioner's final decision despite the lack of a medical opinion expressly speaking to the physical portion of the RFC determination of sedentary work, and relying, instead, on the relevant medical findings in the treatment notes). Where the record contains sufficient evidence, an ALJ is permitted to make determinations related to severe impairments. *Cook v. Comm'r of Soc. Sec.,* 818 F. App'x 108, 109–10 (2d Cir. 2020) (summary order) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.' . . . Here, the treatment notes were in line with the ALJ's RFC determinations.").

As such, ALJ Weir considered the opinion evidence (Tr. 26-28), along with plaintiff's testimony (Tr. 21), treatment history (Tr. 21-26), and activities of daily living, including part-time work for 21 hours a week (Tr. 21) in formulating an RFC that was consistent with the record as a whole. *See Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 49 n.3 (2d Cir. 2021) ("An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear."). The ALJ thoroughly discussed plaintiff's mental health treatment, including anxiety, irritability, and emotional volatility:

> The majority of [plaintiff]'s complaints involve anxiety and difficulty interacting with others, including on the bus, where she lives, with family, and in social settings. [Tr. 592-640]. I have accounted for [Plaintiff]'s anxiety and social difficulties with limitations to no work with the public, no tandem work, and no more than occasional coworker and supervisory contact. However, [plaintiff]'s treatment records also support a finding that Plaintiff does not have greater mental functional limitations. For example, all of [Plaintiff]'s mental status examinations showed her to have intact cognitive status and/or intact memory, attention, and concentration. Despite her anxiety and irritability, she presents as cooperative and appropriate. Such findings are consistent with a finding that [plaintiff] is otherwise capable of performing all other mental work related activities on a sustained basis. (Tr. 26).

Contrary to plaintiff's assertion that it is unclear how ALJ Weir arrived at the functional limitations, his repeated explanations and analysis allow the Court to clearly glean his rationale. The ALJ adequately explained the basis for mental limitations in the opinion as well as the reason he did not include additional limitations. (Tr. 26, 28.) As discussed above, the ALJ expressly considered plaintiff's difficulties controlling her emotions in social situations and accounted for them in the RFC. (Tr. 26 *citing* 592-640 ("The majority of [plaintiff]'s complaints involve anxiety and difficulty interacting with others, including on the bus, where she lives, with family, and in social settings. I have accounted for [plaintiff]'s anxiety and social difficulties with limitations to no work with the public, no tandem work, and no more than occasional coworker and supervisory contact.").

Plaintiff specifically contends the opinion from her social worker, Ms. Nagro, supports greater limitations. However, the ALJ considered the opinion, found it not persuasive, and explained which portions were used in formulating the RFC and which were not. (Tr. 28). Under the revised regulations for evaluating medical opinion evidence, the ALJ appropriately considered the supportability and consistency of the opinion in his analysis. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Ms. Nagro's treatment records and other evidence of record were not consistent with her opinion. (Tr. 28). For example, Ms. Nagro opined plaintiff would need frequent breaks at work due to stress and anxiety, however, as explained by the ALJ this finding was inconsistent with her treatment notes which indicated that plaintiff's anxiety and stress was primarily related to financial problems, not work-related issues, and that plaintiff reported being happy about working more hours. (Tr. 28 *citing* 609, 611, 615, 631, 635). The ALJ also noted Ms. Nagro's highly restrictive limitations were inconsistent with her findings that plaintiff was able to "handle the larger problems in life with ease([*i.e.*] finances, job, etc[.]) but often struggle[d] with smaller tasks daily." (*Id*. citing 592). Treatment notes also stated plaintiff's job was handled with ease

8

which is inconsistent with the opinion of limitations that preclude work. *Id*. Accordingly, the ALJ reasonably concluded that the supportability factor precluded finding Ms. Nagro's opinion persuasive. Similarly, the ALJ found that Ms. Nagro's opined limitations were not consistent with other evidence of record, including the mental status examination from Dr. Ransom, clinical findings from plaintiff's other health providers, her part-time work activity, and her other activities of daily living[1]. (Tr. 28 *referring to* 304-06, 318-427).

Plaintiff cites other findings and statements in the record which she contends are consistent with Ms. Nagro's assessment. (Dkt. No. 9 at 15-17). However, under the substantial evidence standard of review, it is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. When substantial evidence of record supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision. *See Vilardi v. Astrue*, 447 Fed. App'x 271, 272 (2d Cir. Jan. 10, 2012) (summary order); *Rouse v. Colvin*, No. 14-CV-817S, 2015 WL 7431403, at *6 (W.D.N.Y. Nov. 23, 2015) (unpublished).

**B. Urinary Incontinence**

Plaintiff also argues the ALJ failed to identify, develop testimony, and incorporate limitations into the RFC for her urinary incontinence. (Dkt. No. 9 at 17). Indeed, the ALJ did not find the condition to be a severe or non-severe impairment but as plaintiff concedes he did mention the diagnosis in the decision. (*Id*.). Plaintiff does not cite any evidence of record regarding treatment or limitations but only reports "plaintiff's incontinence was so significant that she asked her doctor for a prescription for adult diapers." (Dkt. No. 9 at 19). Again, plaintiff acknowledges

---

[1] Dr. Ransom found plaintiff's mental status exam to be within normal limits and she only opined mild limitations. (Tr. 304-06). Records from Ken-Ton Family Care repeatedly indicate appropriate mood and affect during general examination. (i.e. Tr. 322, 330, 336, 341).

the ALJ did not overlook this evidence, as it was mentioned in the decision, but claims the ALJ had the burden to further develop the limitations and severity of the impairment. Looking to the administrative record, plaintiff complained of urinary incontinence during a single visit to her primary care doctor in November 2018 and was prescribed medication. (Tr. 692-94). At a follow up examination in June 2019 plaintiff had no genitourinary complaints and denied "urinary frequency." (Tr. 685-88). Similarly, at an October 2019 examination plaintiff denied urinary symptoms, and incontinence was not included in her list of medical problems. (Tr. 861).

As an initial matter, there is no evidence the impairment met the 12-month durational requirement to be considered a severe impairment. In order to qualify for DIB or SSI an impairment must last for a continuous period of 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Contrary to case law cited by plaintiff, there was only one treatment record for urinary incontinence during the relevant period of nearly six years. Furthermore, although plaintiff attempts to shift her burden to the ALJ, at the hearing plaintiff's representative was permitted to question her but did not ask about urinary incontinence symptoms or limitations. (Tr. 42-57). Indeed, plaintiff's representative developed testimony about her ability to sit (Tr. 45), stand (Tr. 46), walk (Tr. 46-47), reach (Tr. 47); as well as her impairments including shortness of breath or wheezing (Tr. 47), obesity (Tr. 47-48), back pain (Tr. 48-49), attention and concentration problems (Tr. 49-50), sleep problems (Tr. 50), and mental health issues (Tr. 51), including depression (Tr. 52-53), emotional volatility (Tr. 53-54), anxiety (Tr. 54-55), and marijuana use (Tr. 55-56). Counsel concluded his questioning without ever mentioning urinary incontinence. (Tr. 56). The ALJ followed up by asking Plaintiff "[i]s there anything else, ma'am, you want to tell me that you think is important?" (Tr. 59). Plaintiff did not raise the alleged issues with urinary incontinence, and counsel declined the opportunity to ask any additional questions. (*Id.*). Plaintiff's current

representative is the same at the hearing yet there is no explanation why urinary incontinence was not raised as a severe impairment or related limitations alleged at any time from application through the hearing. Plaintiff has not introduced any evidence showing that she was not able to perform work commensurate with the ALJ's RFC finding, or that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record.

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is

**GRANTED**.

Dated: September 27, 2022  *J. Gregory Wehrman*
Rochester, New York  HON. J. Gregory Wehrman
United States Magistrate Judge